UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUSTIN QUINN,<br><br>        Plaintiff,<br><br>v.<br><br>CANNABIS10X, LLC,<br>JASON TROPF, individually, and<br>HOLLY FORD, individually,<br><br>        Defendants. | Civ. A. No. 25-12829<br><br>**Jury demanded.** |

# COMPLAINT

1. Justin Quinn brings this action against Cannabis10X, LLC, and its owners and officers Jason Tropf and Holly Ford alleging violations of the Massachusetts independent contractor statute, M.G.L. c. 149, § 148B, the Massachusetts minimum wage law, M.G.L. c. 151, § 1, and the Massachusetts Wage Act, M.G.L. c. 149, § 148.

2. As set forth herein, Cannabis10X retained Mr. Quinn's services as a "broker" to sell cannabis "franchises" to prospective buyers. In that role, Cannabis10X classified Mr. Quinn as an independent contractor, paid him no base wages or benefits, and required him to pay quarterly fees for the use of Cannabis10X's technical services and properties. Cannabis10X later terminated Mr. Quinn without paying him any compensation for the hundreds of hours he had worked as a "broker" for the company.

3. In this action, Mr. Quinn alleges that his classification as an independent contractor by Cannabis10X was improper and illegal. He seeks to recover compensatory damages arising from his misclassification, including all unpaid wages and benefits earned, restitution for all improper fees he paid in connection with his work for CannabisX10, mandatory

1

treble damages under M.G.L. c. 149, § 150, and M.G.L. c. 151, § 20, interest, and attorneys' fees and costs.

## Jurisdiction & Venue

4. The District Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a) because this is a civil action where there is complete diversity between the parties and because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. Venue is proper in Eastern Division of the District of Massachusetts because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Middlesex County, Massachusetts, which lies in the Eastern Division.

## The Parties

6. Justin Quinn is an adult individual and citizen of Massachusetts who is domiciled in Groton, Massachusetts.

7. Cannabis10X, LLC, is a limited liability corporation organized under the laws of the State of Florida which maintains its principal offices in Palm Harbor, Florida.

8. Jason Tropf is an adult individual and citizen of Florida who is domiciled in Palm Harbor, Florida.

9. Holly Ford is an adult individual and citizen of Florida who is domiciled in Palm Harbor, Florida.

## Statement of Facts

10. Cannabis10X, LLC ("10X"), is a company based in Florida that operates in several states, including Massachusetts.

11. 10X is in the business of selling cannabis "franchises" to prospective buyers on behalf of cannabis "franchisors."

12. Jason Tropf and Holly Ford are the co-founders and co-CEOs of 10X.

13. Mr. Tropf and Ms. Ford are actively and directly involved in 10X's management and operations, including, *inter alia*, hiring and firing prospective brokers, determining whether to classify 10X's brokers as independent contractors, and establishing the terms and conditions of the brokers' compensation.

14. On its website, 10X markets cannabis franchising as a way to "Get Wealthy in the Fastest Growing Industry in History" and a "brilliant avenue for intelligent investors to enter the Cannabis industry."

15. In order to provide these cannabis franchising "opportunities" to prospective buyers, 10X actively recruits individuals to work for the company as "brokers."

16. 10X's brokers are responsible for generating "leads" and selling cannabis franchises to prospective "franchisees" on behalf of 10X's clients.

17. 10X classifies its brokers as independent contractors, rather than employees.

18. Mr. Quinn was one such broker whom 10X recruited to sell cannabis franchises to prospective buyers.

19. 10X recruited Mr. Quinn in August 2023. On August 11, 2023, Mr. Quinn executed a "Broker Franchise Sales Agreement" with 10X, a copy of which is included as **Exhibit 1**.

20. After an initial training period, which was conducted remotely using a videoconference platform, Mr. Quinn spent the next eight months working as a broker for 10X.

21. Mr. Quinn performed all his services for 10X exclusively in Massachusetts.

22. The work performed by Mr. Quinn for 10X was primarily to follow-up on leads provided to him by 10X and to generate his own leads for potential sales.

23. In exchange for his work, 10X agreed to pay Mr. Quinn certain commissions based on a percentage of revenue generated by Mr. Quinn in connection with his sales efforts.

24. Aside from these promised commissions, 10X provided Mr. Quinn with no other compensation – such as an hourly minimum wage or fixed monthly salary – for his work.

25. Similarly, 10X failed to provide Mr. Quinn with any employment benefits, such as paid vacation time, paid sick time as required by M.G.L. c. 149, § 148C, and any other benefits that 10X provides to its employees.

26. Mr. Quinn routinely worked at least 30 hours per week for 10X attempting to generate leads and sell franchises to 10X's prospects. Primarily he engaged in this work from home, by phone and e-mail.

27. 10X required Mr. Quinn to pay a $200 quarterly fee for the use of a 10X email account, access to certain other software platforms, and for a certain number of "leads."

28. Despite paying the quarterly fee, 10X failed to provide Mr. Quinn with all the leads to which he was entitled by dint of that quarterly payment, per 10X's stated policies.

29. 10X never paid Mr. Quinn any compensation – be it commissions or a base minimum wage – for the work he performed.

30. In May 2024, Mr. Tropf and Ms. Ford sent Mr. Quinn and an unknown number of other brokers the following message:

> Good Morning,
>
> We had a great run with many brokers joining the 10X Team for the initial probationary period. Unfortunately, some of you did not continue as agreed with weekly reporting out and consistent, persistent sales cycles. For that reason, we must keep a lean and mean team and will eliminate some of you.
>
> If you are receiving this, this is letter [sic] to inform you that your termination from the Cannabis10x team is effectively immediately. If

> there is any monthly payment for the Month [sic] of May, it will be refunded.
>
> Thank you for your efforts and we wish you the best.

31. Despite classifying Mr. Quinn as an independent contractor, 10X cannot satisfy the statutory test for classifying him in that manner.

32. Mr. Quinn was an individual who performed a service for 10X; that is, as a broker, he attempted to generate sales leads and to sell cannabis franchises on behalf of 10X's clients.

33. Mr. Quinn was subject to 10X's control and direction concerning the manner in which he performed his lead-generation and sales services:

    a. 10X determined the rate and method of Mr. Quinn's compensation.

    b. 10X made the unilateral decision to hire and fire Mr. Quinn.

    c. 10X established the policies and practices to be used by Mr. Quinn for generating leads and making sales.

    d. 10X provided training to Mr. Quinn.

    e. 10X required Mr. Quinn to obtain 10X's approval before using any self-generated marketing materials with prospects.

    f. 10X prohibited Mr. Quinn from accepting any non-monetary consideration from any franchisor, vendor, or 10X business partner.

    g. 10X's agreement contained a "for-cause" termination provision which permitted 10X to immediately fire Mr. Quinn for violating certain policies.

34. Mr. Quinn performed a service that was a part of 10X's usual course of business; indeed, the service he performed (sales) was integral to 10X's operation because without brokers

like Mr. Quinn to generate leads or make sales, 10X would not be able to provide its cannabis franchising services to customers.

35. Mr. Quinn was not engaged in an independently established trade, occupation, or business as a cannabis franchise broker before, during, or after his term of service with 10X.

36. Mr. Quinn had no cannabis franchise sales experience prior to working for 10X and has not pursued that work since his termination.

37. 10X also required Mr. Quinn to adhere to a non-solicitation and non-compete provisions, such that Mr. Quinn could not seek to "grow" his "own" independent business while working for 10X or for a period of time thereafter.

### Administrative Filing

38. Mr. Quinn has filed his statutory claims with the Massachusetts Office of the Attorney General's Fair Labor Division. On September 27, 2024, the Attorney General's Office issued Mr. Quinn a letter authorizing him to file suit on those claims.

### COUNT I
### M.G.L. c. 149, § 148B

39. Mr. Quinn incorporates here, by reference, all preceding allegations in this complaint.

40. As set forth herein, Mr. Quinn claims that Defendants have violated the Massachusetts independent contractor statute, M.G.L. c. 149, § 148B, by classifying him as an independent contractor, when he should have been classified as an employee.

41. Mr. Quinn brings this claim pursuant to M.G.L. c. 149, § 150.

## COUNT II
## M.G.L. c. 151, § 1

42. Mr. Quinn incorporates here, by reference, all preceding allegations in this complaint.

43. As set forth herein, Mr. Quinn claims that Defendants have violated the minimum wage provision of the Massachusetts Minimum Fair Wage Law, M.G.L. c. 151, § 1, by failing to pay him at least the statutory basic minimum wage for all hours worked.

44. Mr. Quinn brings this claim pursuant to M.G.L. c. 151, § 20.

## COUNT III
## M.G.L. c. 149, § 148

45. Mr. Quinn incorporates here, by reference, all preceding allegations in this complaint.

46. As set forth herein, Mr. Quinn claims that Defendants have violated the Massachusetts Wage Act, M.G.L. c. 149, § 148, by requiring him to pay quarterly fees for technology services and sales leads and by failing to pay him all benefits he would have been owed as an employee of 10X, such as paid vacation time and earned sick time.

47. Mr. Quinn brings this claim pursuant to M.G.L. c. 149, § 150.

## Jury Demand

47. Mr. Quinn demands a trial by jury on all his claims.

## Prayer for Relief

WHEREFORE, Mr. Quinn respectfully requests that the Court enter judgment against Defendants and award him the following relief:

1. compensatory damages for all wages and benefits owed;

2. treble damages as provided for by M.G.L. c. 149, § 150, and M.G.L. c. 151, § 20;

3.   pre- and post-judgment interest;

4.   attorneys' fees and costs; and

5.   all such other relief as this Court deems just and proper.

                                                 Respectfully submitted,
                                                 JUSTIN QUINN,

                                                 By his attorneys,

                                               /s/ Brant Casavant
                                               Brant Casavant, BBO #672614
                                               FAIR WORK P.C.
                                               192 South Street, Suite 450
                                               Boston, MA 02111
                                               (t) 617-231-6777
                                               brant@fairworklaw.com

                                               Dated: September 30, 2025.